UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUITY TRUST COMPANY, et al.,                    Case No. 17-12275

        Plaintiffs,                               Honorable George C. Steeh

v.

TIMOTHY JAMES KOPACKA, et al.,

        Defendants.
_____/

| | |
|---|---|
| Daniel J. Broxup (P72868) | Raymond W. Henney (P35860) |
| Kimberly M. Large (P70698) | Adam M. Wenner (P75309) |
| Mika Meyers PLC | Honigman Miller Schwartz and Cohn LLP |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 900 Monroe Avenue, NW | 2290 First National Building |
| Grand Rapids, MI 49503 | 660 Woodward Avenue |
| (616) 632-8000 | Detroit, Michigan 48226 |
| dbroxup@mikameyers.com | (313) 465-7410 |
| klarge@mikameyers.com | rhenney@honigman.com |
| | awenner@honigman.com |
_____/

## DEFENDANTS' MOTION TO DISMISS
## PLAINTIFFS' FIRST AMENDED COMPLAINT

Defendants Timothy J. Kopacka, United Mortgage Trust, United Development Funding II, LP and United Development Funding III, LP (collectively, "Defendants") move to dismiss Plaintiffs' First Amended Complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reasons set forth in the attached Brief.

Pursuant to Local Rule 7.1, Counsel for Defendants held a telephone conference on September 14, 2017 with counsel for Plaintiffs to explain the nature of this motion and its supporting legal basis.  The parties were unable to come to an agreement, and concurrence was denied.

WHEREFORE, Defendants respectively request that this Court dismiss Plaintiffs' First Amended Complaint in its entirety, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

/s/  Raymond W. Henney
Raymond W. Henney (P35860)
Adam M. Wenner (P75309)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Defendants
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
(313) 465-7410
rhenney@honigman.com
awenner@honigman.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUITY TRUST COMPANY, et al.,              Case No. 17-12275

        Plaintiffs,                          Honorable George C. Steeh

v.

TIMOTHY JAMES KOPACKA, et al.,

        Defendants.

_____/

| | |
|---|---|
| Daniel J. Broxup (P72868) | Raymond W. Henney (P35860) |
| Kimberly M. Large (P70698) | Adam M. Wenner (P75309) |
| Mika Meyers PLC | Honigman Miller Schwartz and Cohn LLP |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 900 Monroe Avenue, NW | 2290 First National Building |
| Grand Rapids, MI 49503 | 660 Woodward Avenue |
| (616) 632-8000 | Detroit, Michigan 48226 |
| dbroxup@mikameyers.com | (313) 465-7410 |
| klarge@mikameyers.com | rhenney@honigman.com |
| | awenner@honigman.com |

_____/

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF ISSUES PRESENTED ........................................... viii

I.  PRELIMINARY STATEMENT ....................................................1

II.  PERTINENT ALLEGATIONS ......................................................2

III.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED ...................5

   A.  Plaintiffs' RICO Claims Must Be Dismissed Because the Act
       Does Not Apply to Securities Fraud or Securities Transactions...........5

   B.  Plaintiffs' Remaining Claims Are Time-Barred ..................................9

       1.  *Plaintiffs' Untimely Federal Securities Law Claim*...................9

       2.  *Plaintiffs' Barred Common Law Fraud Claims* ......................11

       3.  *Plaintiffs' Untimely Breach of Fiduciary Duty and
           Negligent Misrepresentation Claims* ........................................12

   C.  Plaintiffs' State Law Claims Are Not Saved by Equitable
       Tolling ...................................................................................14

       1.  *The Discovery Rule Does Not Apply*.........................................15

       2.  *Plaintiffs Fall Remarkably Short of Pleading Fraudulent
           Concealment*................................................................................17

   D.  Plaintiffs Have Failed to Properly Plead Their Securities Fraud,
       Common Law Fraud, and Breach of Fiduciary Duty Claims ............23

       1.  *Federal Securities Fraud* .........................................................25

       2.  *State Law Claims* ......................................................................29

       3.  *Plaintiffs' Breach of Fiduciary Duty Claim is Not
           Cognizable for at Least Two Other Reasons* ...........................31

IV.  CONCLUSION................................................................................32

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*,
176 F.3d 315 (6th Cir. 1999) ...............................................................30

*Albert Fadem Tr. v. Am. Elec. Power Co.*,
334 F. Supp. 2d 985 (S.D. Ohio 2004) ...............................................28

*Aries Aluminum Corp. v. King*,
No. 98-4108, 1999 WL 801523 (6th Cir. Sept. 30, 1999)....................6

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*,
189 F.3d 321 (3d Cir. 1999) .................................................................7

*Barton v. NL Indus., Inc.*,
No. 08-12558, 2010 WL 4038738 (E.D. Mich. Sept. 30, 2010) ........16

*Bero Motors v. Gen. Motors Corp.*,
No. 224190, 2001 WL 1167533 (Mich. Ct. App. Oct. 2, 2001) .........13

*Bovee v. Coopers & Lybrand C.P.A.*,
272 F.3d 356 (6th Cir. 2001) .............................................................22

*Boyle v. Gen. Motors Corp.*,
661 N.W.2d 557 (Mich. 2003)............................................................16

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
371 F.3d 883 (6th Cir. 2004) .............................................................17

*California Pub. Emps. Ret. Sys. v. ANZ Secs., Inc.*
137 S. Ct. 2042 (2017)..................................................................10, 11

*Campbell v. Upjohn Co.*,
676 F.2d 1122 (6th Cir. 1982) ......................................................19, 23

*Cheatom v. Quicken Loans Inc.*,
No. 13-12440, 2013 WL 12099393 (E.D. Mich. Oct. 15, 2013) .......13

ii

*City of Livonia Emps. Ret. Sys. v. Boeing Co.*,
    711 F.3d 754 (7th Cir. 2013) ...............................................................26

*CTS Corp. v. Waldburger*,
    134 S. Ct. 2175 (2014)........................................................................10

*Dailey v. Medlock*,
    551 Fed. App'x. 841 (6th Cir. 2014) ...................................................26

*Davis v. Keyes*,
    859 F. Supp. 290 (E.D. Mich. 1994) ...................................................31

*Denny v. Barber*,
    576 F.2d 465 (2d Cir. 1978) ................................................................27

*Evans v. Pearson Enters., Inc.*,
    434 F.3d 839 (6th Cir. 2006) ...............................................................18

*Fed.-Mogul World Wide, Inc. v. Mahle GmbH*,
    No. 11-10675, 2011 WL 4485080 (E.D. Mich. Sept. 27, 2011) ........20

*Fillinger v. Lerner Sampson & Rothfuss*,
    624 F. App'x 338 (6th Cir. 2015) ........................................................19

*Frank v. Linkner*,
    894 N.W.2d 574 (Mich. 2017)..............................................................15

*Gen. Ret. Sys. of the City of Detroit v. Onyx Capital Advisors*,
    LLC, No. 10–CV–11941, 2011 WL 4528304 (E.D. Mich. Sept. 29,
    2011) ......................................................................................................7

*Gomez v. Great Lakes Steel Div.*,
    803 F.2d 250 (6th Cir. 1986) ...............................................................20

*Good v. Howmedica Osteonics Corp.*,
    No. 15-CV-10133, 2015 WL 8175256 (E.D. Mich. Dec. 8, 2015)....16

*Hamilton Cty. Bd. of Comm'rs v. Nat'l Football League*,
    491 F.3d 310 (6th Cir. 2007) ...............................................................23

*Hanover Exch. v. Metro Equity Grp. LLC*,
    No. 2:08-CV-14897, 2009 WL 2143866 (E.D. Mich. July 14,
    2009) ....................................................................................................30

*Hasse v. GunnAllen Fin., Inc.*,
   No. 08–10927, 2011 WL 768045 (E.D. Mich. Feb. 28, 2011)...........................32

*Howard v. America Online Inc.*,
   208 F.3d 741 (9th Cir. 2000) ................................................................................7

*Jarbo v. BAC Home Loan Servicing*,
   No. 10–12632, 2010 WL 5173825 (E.D. Mich. Dec. 15, 2010) .................14, 32

*Javitich v. First Montauk Fin. Corp.*,
   279 F. Supp. 2d 931 (N.D. Ohio 2003) ................................................................7

*Joliet v. Pitoniak*,
   715 N.W.2d 60 (Mich. 2006)...............................................................................12

*Kwiatkowski v. Bear Stearns & Co., Inc.*,
   306 F.3d 1293 (2d Cir. 2002) .............................................................................31

*Lenawee Cty. Drain Comm'r v. Env't One Corp*.,
   No. 07-CV-14290, 2008 WL 11356774 (E.D. Mich. Apr. 29, 2008)
   (Steeh, J) ......................................................................................................17, 19

*Louisiana School Emps. Ret. Sys. V. Ernst & Young, LLP*,
   622 F.3d 471 (6th Cir. 2010) ..............................................................................26

*Lubbers v. Flagstar Bancorp. Inc.*,
   162 F. Supp. 3d 571 (E.D. Mich. 2016) .............................................................26

*O'Bryan v. Holy See*,
   556 F.3d 361 (6th Cir. 2009) ................................................................................9

*U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*,
   525 F.3d 439 (6th Cir. 2008) ..............................................................................24

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011)...............................................................................................25

*McLean v. Countrywide Home Loans, Inc*.,
   No. 09-CV-11239, 2009 WL 2777017 (E.D. Mich. Aug. 27, 2009)
   (Steeh, J.) ............................................................................................................21

*Miller v. Laidlaw & Co. (UK)*,
   No. 11-12086, 2013 WL 1278484 (E.D. Mich. Mar. 27, 2013).............29, 30, 31

iv

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  651 F.3d 268 (2d Cir. 2011) ...............................................................7

*Moross Ltd. Partnership v. Fleckenstein Capital, Inc.*,
  466 F.3d 508 (6th Cir. 2006) ......................................................12, 13

*New England Health Care Emps. Pension Fund v. Ernst & Young,
  LLP*,
  336 F.3d 495 (6th Cir. 2003) ...........................................................21

*In re NM Holdings Co., LLC*,
  622 F.3d 613 (6th Cir. 2010) ...........................................................14

*In re Omnicare, Inc. Secs. Litig.*,
  769 F.3d 455 (6th Cir. 2014) ...........................................................25

*Platsis v. E.F. Hutton & Co. Inc.*,
  642 F. Supp. 1277 (W.D. Mich. 1986) .............................................20

*In re Rospatch Secs. Litig.*,
  Nos. 1:90–CV–805, 1:90–CV–806, 1:90–CV–85, 1991 WL
  335253 (W.D. Mich. Oct. 11, 1991)..................................................10

*Ruth v. Unifund CCR Partners*,
  604 F.3d 908 (6th Cir. 2010) ......................................................14, 22

*Shields v. Citytrust Bancorp, Inc.*,
  25 F.3d 1124 (2d Cir. 1994) .............................................................28

*Sills v. Oakland Gen. Hospital*,
  559 N.W.2d 348 (Mich. Ct. App. 1996)............................................15

*Smith v. Bank of America Corp.*,
  485 F. App'x 749 (6th Cir. 2012) .....................................................24

*Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*,
  821 F.3d 780 (6th Cir. 2016) ................................................10, 11, 15

*Taborac v. NiSource, Inc.*,
  No. 2:11-cv-498, 2011 WL 5025214 (S.D. Ohio Oct. 21, 2011)........8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2011)...........................................................................28

*Thomas v. Daneshgari*,
  997 F. Supp. 2d 754 (E.D. Mich. 2014) ..............................................................8

*Tinney v. Widdis, Inc.*,
  No. 328050, 2016 WL 6584571 (Mich. Ct. App. Nov. 3, 2016) ................21, 22

*Trentadue v. Buckler Lawn Sprinkler*,
  738 N.W.2d 664 (Mich. 2007)....................................................................15, 16

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
  475 F.3d 824 (7th Cir. 2007) ..............................................................................24

*Universal Bearing Co. v. Baker Bearing Co.*,
  No. 10-11142, 2013 WL 1211463 (E.D. Mich. Mar. 25, 2013)........................18

*Yermian v. Countrywide Home Loans, Inc.*,
  No. 09-CV-12665, 2009 WL 5150882 (E.D. Mich. Dec. 17, 2009)
  (Steeh, J.) ...........................................................................................................29

*Zaluski v. United Am. Healthcare Corp.*,
  527 F.3d 564 (6th Cir. 2008) ...............................................................................9

**STATUTES**

15 U.S.C. § 78j(b) ......................................................................................................9

15 U.S.C. § 78u–4(b)(1)(B) .....................................................................................25

18 U.S.C. § 1962 .......................................................................................................6

18 U.S.C. § 1962(c) ..............................................................................................5, 8

28 U.S.C. § 1658(b) ..................................................................................................9

Mich. Comp. Laws. § 600.5805(10)...................................................................13, 17

Mich. Comp. Laws § 600.5813 ...............................................................................17

Mich. Comp. Laws § 600.5855 ...............................................................................15

Mich. Comp. Laws § 600.5827 ...............................................................................17

# OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ............................................................................*passim*

SEC Rule 10b–5................................................................................9, 25

Fed. R. Civ. P. 12(b)(6).........................................................................20

## **STATEMENT OF ISSUES PRESENTED**

1.      Are Plaintiffs' RICO claims—premised exclusively on allegations of securities fraud—cognizable under the Private Securities Litigation Reform Act?

> **Plaintiffs' Answer: Yes**
> **Defendants' Answer: No**

2.      Is Plaintiffs' securities fraud claim under Section 10(b) of the Securities Exchange Act barred by the five-year statute of repose where the securities at issue were sold between 2000 and 2009?

> **Plaintiffs' Answer: No**
> **Defendants' Answer: Yes**

3.      Is Plaintiffs' common law fraud claim barred by the six-year statute of limitations where the purported fraud is tethered to the sale of securities occurring between 2000 and 2009?

> **Plaintiffs' Answer: No**
> **Defendants' Answer: Yes**

4.      Are Plaintiffs' breach of fiduciary duty and negligent misrepresentation claims barred by the three-year statute of limitations where the purported misrepresentations occurred, if at all, when the securities were sold between 2000 and 2009?

> **Plaintiffs' Answer: No**
> **Defendants' Answer: Yes**

5.      Are Plaintiffs' state law claims subject to equitable tolling where the common law discovery rule has been abolished and the First Amended Complaint fails to properly allege fraudulent concealment?

> **Plaintiffs' Answer: Yes**
> **Defendants' Answer: No**

6.    Is Plaintiffs' securities fraud claim pled with the specificity required under the Private Securities Litigation Reform Act and Rule 9(b) of the Federal Rules of Civil Procedure?

**Plaintiffs' Answer: Yes**
**Defendants' Answer: No**

7.    Are Plaintiffs' state law claims—all of which are predicated on fraud— adequately pled under Rule 9(b)?

**Plaintiffs' Answer: Yes**
**Defendants' Answer: No**

8.    Is Plaintiffs' breach of fiduciary duty claim cognizable where the accounts at issue were non-discretionary?

**Plaintiffs' Answer: Yes**
**Defendants' Answer: No**

## I.    PRELIMINARY STATEMENT

Plaintiffs' claims are premised on supposed misrepresentations in the sale of securities. The basis of their claims stems from the sensational and baseless allegation that Defendant Timothy Kopacka was barred by the National Association of Securities Dealers ("NASD") "from the securities brokerage industry," which is a term Plaintiffs created and not what the NASD consent agreement provides. First Amended Complaint ("FAC") ¶ 22. To be clear, Mr. Kopacka was not barred from the securities industry.[1] Based upon this contrived premise, Plaintiffs spin the tale that Mr. Kopacka sold to the Plaintiffs the investments at issue and received commissions and compensation for those sales. Those allegations are false. Further, Plaintiffs wrongly claim that at the time of those sales, Mr. Kopacka failed to disclose being barred "from the securities brokerage industry," his relationship with

---

[1] In 1998, Mr. Kopacka agreed to an NASD consent decree for a technical violation of the rules regarding selling investments outside his licensing firm. The investments had been orally approved by his supervisor and no investor was harmed. The NASD sanction was a limited bar and did not, and does not, prohibit Mr. Kopacka from participating in the securities industry. Indeed, **Mr. Kopacka is registered with the State of Michigan as an investment advisor.** The Securities and Audit Division of Michigan's Department of Licensing and Regulatory Affairs agreed to register Mr. Kopacka as an investment advisor after it investigated the circumstances of the NASD consent order, the allegations of the NASD, and the factual basis of the NASD enforcement action. The Division concluded that the circumstances of the consent order did not disqualify Mr. Kopacka from participating in the securities industry and did not create a risk to the public

the investments at issue, and the risks of those investments. Defendants are confident that the evidence will not support Plaintiffs' misrepresentation claim.

But first things first.  None of Plaintiffs' baseless allegations cure the severe legal defects of Plaintiffs' claims, all of which require dismissal as a matter of law. Specifically, Plaintiffs' RICO claims are not viable because Congress has clearly provided that RICO does not apply to securities transactions.  Further, Plaintiffs' remaining claims are barred by the applicable statutes of limitation because the alleged wrongdoing occurred years ago.  Finally, Plaintiffs' fraud-based claims do not sufficiently allege the purported fraudulent conduct.

Accordingly, this Motion should be granted and Plaintiffs' claims should be dismissed.[2]

## II.   PERTINENT ALLEGATIONS

Between 2000 and 2009, Plaintiffs purchased interests in United Development Funding (collectively, the "UDF Funds")[3] and United Mortgage Trust; real estate investment vehicles offered by non-party Grosse Pointe Financial through its registered broker-dealer.  FAC ¶¶ 25, 38.[4]  Up until 2016—some eight to seventeen

---

[2] On September 15, 2017, the Court entered a Stipulated Order extending the page limitations set forth under Local Rule 7.1.  (Dkt. 12).

[3] The "UDF Funds" include Defendants United Development Funding II, LP and United Development Funding III, LP.

[4] *See* Ex. A, Plaintiffs' Investment Dates.

years after their initial investment—Plaintiffs were seemingly satisfied with the performance of the funds, and offer no indication that they considered selling. *See id.* at ¶¶ 89, 114, 134, 154, 177. In February 2016, the UDF Funds became the subject of an FBI investigation "following allegations that they [were] operating a Ponzi scheme." *Id.* at ¶ 53. The FBI's investigation prompted Plaintiffs' complaint, which is narrowly focused on three events that purportedly occurred, if at all, "when [Defendant Timothy Kopacka] recommended that they purchase" shares of UMT and/or the UDF Funds. *Id.* at ¶¶ 31-33, 89, 114, 134, 154, 177.

Defendant Timothy Kopacka "was a registered representative and securities agent of various securities broker-dealer firms." *Id.* at ¶ 21. Given his extensive experience, "Kopacka provided investment advice to Plaintiffs . . . ." and others seeking his counsel. *Id.* at ¶ 24. Plaintiffs allege that Mr. Kopacka made three misrepresentations at the time he recommended the UMT/UDF Funds: (1) he "never disclosed that he was a direct or indirect owner, manager, and/or advisor of UMT, UDF II, or UDF III."; (2) he "misrepresented the risk, liquidity, and other features of the investments . . . ."; and (3) he "failed to disclose . . . that he was barred from the securities brokerage industry . . . ." *Id.* at ¶¶ 31-33. Plaintiffs admit that the purported misrepresentations all occurred at the time of sale—"which took place between 2000 and 2009"—and that Mr. Kopacka was not responsible for executing the transactions. *Id.* at ¶¶ 226, 31-33, 38-40.

3

The FAC formulaically recites this "trilogy" of improper conduct in substantially the same format for each of the individual Plaintiffs: "[t]he Wrubels discovered . . . that Kopacka had concealed . . . his NASD bar, unregistered investment advisor status, conflicts of interest, and the lack of suitability . . . *after* the UDF Ponzi scheme allegations made them suspicious that something was wrong . . . ." *Id.* at ¶ 114 (emphasis added); *see also* ¶¶ 134, 154, 177.  In other words, Plaintiffs' memory of Mr. Kopacka's conduct—which took place, if at all, eight to seventeen years prior—was apparently stoked by the "UDF Ponzi scheme allegations." *Id.*

Based on this general premise, Plaintiffs assert eight claims against Mr. Kopacka, Rogers Wadsworth,[5] UMT, and the UDF Funds.  Count 1 seeks to hold Mr. Kopacka liable for common law fraud on the notion that "Plaintiffs would not have invested in [the UMT/UDF Funds] . . . but-for Kopacka's intentional and fraudulent misrepresentations . . . ." *Id.* at ¶ 185.  Counts 2 (breach of fiduciary duty) and 3 (negligent misrepresentation) repeat those allegations and assert that Plaintiffs would not have "made the unsuitable investments but-for" Mr. Kopacka's fiduciary breaches and negligent misrepresentations.  *Id.* at ¶¶ 191, 195-96.  Count 4, asserting

---

[5] Confusingly, "Roger Wadsworth" is listed in the case caption, but is not referenced in the list of Defendants in the body of the complaint. *See* FAC ¶¶ 15-16.  In fact, the only additional reference to Wadsworth appears under Plaintiffs' RICO claim, which is legally barred.  He should be dismissed with prejudice.

a claim under Section 10(b) of the Securities Exchange Act, alleges that Mr. Kopacka is liable for securities fraud on the basis that his "misrepresentations and omissions were undertaken for the purposes of inducing Plaintiffs to purchase the investments at issue . . . ." *Id.* at ¶ 203.  And finally, Count 6 seeks to hold all Defendants liable for civil RICO.  *Id.* at ¶¶ 211-230.[6]

### III.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED

As stated, the central allegations of the FAC consist of: (1) "Kopacka misrepresented the risk, liquidity, and other features of the investments . . . ."; i.e. the "suitability claim"; (2) "Kopacka never disclosed that he was a direct or indirect owner, manager, and/or adviser of UMT" or the UDF Funds; i.e. the "conflict of interest claim"; and (3) "Kopacka failed to disclose to Plaintiffs that he was barred from the securities brokerage industry . . . ."; i.e. the "NASD bar claim." FAC ¶¶ 31-33.  As alleged, all of the purported bad acts occurred at the time of Plaintiffs' investments.  Those allegations are the subject of eight separate claims which are legally barred (a) by Congress, (b) as untimely, or (c) being insufficiently pled.

### A.    Plaintiffs' RICO Claims Must Be Dismissed Because the Act Does Not Apply to Securities Fraud or Securities Transactions

Plaintiffs' RICO claims—premised under 18 U.S.C. § 1962(c)—rest exclusively on allegations of securities fraud. Indeed, the Court need not look

---

[6] The remaining three counts (5, 7, and 8) are derivative claims for aiding and abetting, conspiracy, and agency, respectively.

beyond paragraph 218—the RICO premise—to arrive at this conclusion: The "RICO Associates" "knew that Kopacka operated an unregistered investment advisor firm, was legally prohibited from providing investment advice, was barred by the NASD, and used . . . other registered representatives . . . as conduits through which *to unlawfully sell shares* . . . to his clients." FAC ¶ 218 (emphasis added). Plaintiffs claim that the so-called purpose of the enterprise was "to fraudulently cause Plaintiffs and other investors to *purchase securities* . . . ." *Id.* at ¶ 222 (emphasis added). They further contend that all of the predicate acts of "racketeering activity" (mail fraud and wire fraud) were committed in furtherance of the "investment transactions." *Id.* at ¶ 226. Finally, they assert that their RICO injuries were directly related to the "UMT and UDF investments that [] Kopacka induced Plaintiffs to purchase." *Id.* at ¶ 214. And all of this is problematic for one very basic reason: as a matter of law, RICO claims cannot be based on allegations that Plaintiffs lost money as a result of securities fraud.

Section 107 of the Private Securities Litigation Reform Act ("PSLRA") amended Section 1964(c) of RICO to expressly provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [18 U.S.C. § 1962]." 18 U.S.C. §1964(c) (the "RICO Amendment"). As a result of the statutory bar, "[a]ny fraudulent conduct actionable under the securities laws is no longer actionable under RICO." *Aries*

*Aluminum Corp. v. King*, No. 98-4108, 1999 WL 801523, at *3 (6th Cir. Sept. 30, 1999) (applying the PSLRA's RICO amendment to affirm dismissal, without leave to amend, to RICO claims based on fraud arising from the sale of counterfeit securities); *Howard v. America Online Inc.,* 208 F.3d 741, 749 (9th Cir. 2000) ("[w]e hold that Plaintiffs' securities fraud claims cannot be used to establish a RICO violation.")

Not only does the RICO Amendment eliminate securities fraud as a predicate act in civil RICO claims, but it also prevents Plaintiffs from relying on other predicate acts if they are based on conduct that would have been actionable as securities fraud. *See Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 329-30 (3d Cir. 1999). Thus, Plaintiffs "cannot avoid the RICO amendment by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud." *Javitich v. First Montauk Fin. Corp.*, 279 F. Supp. 2d 931, 943–44 (N.D. Ohio 2003) (quoting *Bald Eagle Area Sch. Dist.*, 189 F.3d at 330, and listing cases reaching the same conclusion); *see also Gen. Ret. Sys. of the City of Detroit v. Onyx Capital Advisors*, LLC, No. 10–CV–11941, 2011 WL 4528304, at *5–7 (E.D. Mich. Sept. 29, 2011). And "even where a plaintiff cannot itself pursue a securities fraud action against the defendant," the RICO Amendment nevertheless still bars any RICO claims. *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 275, 277

(2d Cir. 2011) (citations and quotations omitted) ("the plaintiffs' proffered interpretation of the PSLRA's RICO Amendment—under which so long as [plaintiffs] are pursuing aiders and abettors[,] they may proceed under RICO because their securities claims are not actionable—is treacherous.")

Because both RICO claims (Counts 6 and 7) are based on "alleged conduct that would have been actionable as fraud in the purchase or sale of securities," those claims are legally barred by the PSLRA's RICO Amendment. For that reason alone, Counts 6 and 7 should be dismissed with prejudice. Moreover, because Plaintiffs have failed to state a primary RICO violation of Section 1962(c), the RICO conspiracy claim asserted in Count 7 also necessarily fails. *See, e.g.*, *Taborac v. NiSource, Inc.*, No. 2:11-cv-498, 2011 WL 5025214, at *9 (S.D. Ohio Oct. 21, 2011) (noting that "[w]here . . . the substantive RICO count fails to state a claim, the conspiracy claim fails too.") (citing *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 495 (6th Cir. 1990)).[7]

---

[7] Aside from the absolute statutory bar, Plaintiffs have failed to plead factual allegations demonstrating that each Defendant committed a "pattern" of "racketeering activity", let alone the existence of a cohesive enterprise. *See Thomas v. Daneshgari,* 997 F. Supp. 2d 754, 763 (E.D. Mich. 2014) ("[c]ourts have routinely dismissed RICO actions where the plaintiffs, . . . failed to state with particularity the time, place, subject matter and the precise individuals who, through use of the mails or telephone, made the purportedly fraudulent statements.").

## B.     Plaintiffs' Remaining Claims Are Time-Barred

Plaintiffs' remaining four claims—securities fraud (Count 4), breach of fiduciary duty (Count 2), negligent misrepresentation (Count 3), and common law fraud (Count 1)—all concern the purchase or sale of a security.[8]  Because the latest such transaction took place in 2009, all of these claims are time-barred.

### 1.     Plaintiffs' Untimely Federal Securities Law Claim

Count 4 of the FAC purports to allege violations of Section 10(b) of the Securities Exchange Act of 1934 (the "34 Act") and Securities Exchange Commission Rule 10b-5.    Both provisions "prohibit fraudulent, material misstatements or omissions in connection *with the sale or purchase of a security*." *Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (emphasis added).  Section 10(b) actions are triggered by the purchase of a security, 15 U.S.C. § 78j(b), and, "may be brought not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."  28 U.S.C. § 1658(b).  "The Supreme Court has held the two-year period to be a statute of limitations, and described the five-year period as an '*unqualified*

---

[8] Plaintiffs' so-called "agency" claim (Count 8) is not a recognized cause of action. *O'Bryan v. Holy See*, 556 F.3d 361, 370 n.1 (6th Cir. 2009) ("Plaintiffs also plead a separate cause of action titled 'Respondeat Superior Liability.'  However, *respondeat superior* is not a cause of action." (emphasis original)). Count 5 seeks to impose aider and abettor liability, and fails for the same reason as the substantive breach of fiduciary duty claim.

bar on actions instituted 5 years after such violation,' [] giving defendants total repose after five years.'"  *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 788 (6th Cir. 2016) (emphasis added) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 663, 650 (2010)).  This is critical.

Indeed, "[s]tatutes of repose effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."  *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2183 (2014).  In other words, "[l]ike a discharge in bankruptcy, a statute of repose can be said to provide a fresh start or *freedom from liability*."  *Id.* (emphasis added).  Because a Section 10(b) claim is triggered by the purchase or sale of a security, the "outer limit on the right to bring a civil action" is five years after the sale date.  *See Stein*, 821 F.3d at 786 (dismissing the plaintiff's claim under the 34 Act because section 1658(b)(2) gives "defendants total repose after five years."); *see also In re Rospatch Sec. Litig.*, Nos. 1:90–CV– 805, 1:90–CV–806, 1:90–CV–85, 1991 WL 335253, at *4 (W.D. Mich. Oct. 11, 1991) (the five-year time period is measured "on the date that the purchase or sale of securities occurred.").

Nor is the five year "outer limit" subject to the doctrine of equitable tolling. In fact, the Supreme Court recently addressed this issue in the context of the Securities Act of 1933 (the "33 Act").  *See California Pub. Emps. Ret. Sys. v. ANZ Sec., Inc*. 137 S. Ct. 2042 (2017).  There, the Court held that the three-year period of

10

repose—requiring that "any such action be brought . . . three years after the security was . . . offered to the public"—was critical to the question of whether a tolling rule applied. *Id.* at 2050. And the reason for that is simple: "the object of a statute of repose, to grant complete peace to defendants, supersedes the application of a tolling rule based in equity." *Id.* at 2052. As the Sixth Circuit accurately predicted the year before in *Stein*, this reasoning applies with similar force to the 34 Act: because "statutes of repose give priority to defendants' right to be free of liability after a certain absolute period of time (rather than plaintiffs' ability to bring claims), . . . regardless of whether [] tolling is derived from courts' equity powers or from Rule 23, it does not apply to statutes of repose." *Stein*, 821 F.3d at 794-95.

All of this leads to a very basic—and uncontroversial—conclusion. The five-year period of repose under the 34 Act is "unequivocal in extinguishing liability." *Id.* at 794. Here, Plaintiffs fraud claims are premised on the sale of securities from 2000 to 2009. *See* Ex. A. The statute's "outer limit" closed at least three years ago, and this claim must be dismissed.

### 2. *Plaintiffs' Barred Common Law Fraud Claims*

In Count 1 of the FAC, Plaintiffs allege that "Kopacka defrauded [them] *into investing* in one or more of UMT, UDF II, and UDF III, as well as other high-risk, illiquid investments." FAC ¶ 179 (emphasis added). Common law fraud claims must be brought within six years after the wrongs on which the claims are based

11

were committed. *See Moross Ltd. Partnership v. Fleckenstein Capital, Inc.*, 466 F.3d 508, 518 (6th Cir. 2006) ("[e]ven if [Plaintiff] had sought to amend its complaint, the claims would have been barred by Michigan's . . . six-year statute of limitations for fraud."); *Joliet v. Pitoniak*, 715 N.W.2d 60, 67 (Mich. 2006) ("pursuant to the text of MCL 600.5827, plaintiff's claims accrued at the time the wrongs on which her claims are based were committed, not when she suffered damage.")

As Plaintiffs make clear, the "wrongs" here occurred, if at all, at the time they "invested in" the UMT and UDF Funds. The latest transactions documented in the FAC were finalized in 2009, and the limitations period expired at least two years ago. *See* Ex. A; FAC ¶¶ 68-69. Count 1, therefore, is time-barred and should be dismissed with prejudice.

### 3.   *Plaintiffs' Untimely Breach of Fiduciary Duty and Negligent Misrepresentation Claims*

Counts 2 and 3 suffer from a similar pleading malady. Indeed, not only are Plaintiffs' breach of fiduciary duty and negligent misrepresentation claims untimely, but they are logically inconsistent. On the one hand, Plaintiffs assert that Mr. Kopacka was "not registered to provide investment advice", and had no authority to "consummate the transactions" at issue. *Id*. at ¶¶ 38-39. Yet, despite his lack of authority to do anything, Plaintiffs maintain that Mr. Kopacka nonetheless "owed fiduciary duties of honesty, loyalty, prudence, care, and disclosure to Plaintiffs." *Id.*

12

at ¶ 188. Simply put, Plaintiffs cannot have it both ways. *See Bero Motors v. Gen. Motors Corp.,* No. 224190, 2001 WL 1167533, *4-5 (Mich. Ct. App. Oct. 2, 2001) (plaintiffs' allegations of inexperience and reliance on defendant were insufficient to claim a fiduciary relationship).

Setting aside these seemingly obvious inconsistencies, Plaintiffs' claims are doomed by their own pleadings. According to the FAC, Mr. Kopacka (1) "breached his fiduciary duties to Plaintiffs" by causing them to "*invest in* one or more of UMT, UDF II, and UDF III . . . .", and (2) "[t]hrough a series of negligent misrepresentations . . . . [caused] Plaintiffs to *invest in* one more of [the UMT/ UDF Funds]. . . ." FAC ¶¶ 190, 196. Once again, Plaintiffs' claims arose, if at all, at the time of investment.

In Michigan, breach of fiduciary duty (Counts 2 and 5) and negligent misrepresentation (Count 3) claims are subject to a three-year statute of limitations. Mich. Comp. Laws. § 600.5805(10); *Moross*, 466 F.3d at 518 (holding plaintiff's breach of fiduciary duty claim barred by Michigan's three-year statute of limitations); *Cheatom v. Quicken Loans Inc.*, No. 13-12440, 2013 WL 12099393, at *2-3 (E.D. Mich. Oct. 15, 2013) ("Claims of negligent misrepresentation are subject to a three-year limitations period in Michigan. . . . Because the longest applicable limitations period is six years, and Defendants' conduct [related to the mortgage loan] occurred, at the latest, in January 2005, Plaintiff should have filed

13

suit by no later than January 2011.")  This limitations period also extends to aider and abettor liability (Count 5).  *In re NM Holdings Co., LLC*, 622 F.3d 613, 627 (6th Cir. 2010) (affirming the dismissal of the plaintiff's aiding and abetting breach of fiduciary claim because it was "covered by the residual three-year statute of limitations for tort claims contained in Mich. Comp. Laws Ann. § 600.5805(10)").

As the court explained in *Jarbo v. BAC Home Loan Servicing*—involving improper conduct in connection with the origination and servicing of a mortgage loan—"the events giving rise to [plaintiffs'] tort claims [arose] from events that occurred at the closing on their mortgage loans at the latest, [each of which] occurred more than three years before the . . . lawsuit was filed, . . . ."  No. 10–12632, 2010 WL 5173825, at *16 (E.D. Mich. Dec. 15, 2010).  Similarly here, "the events giving rise" to Plaintiffs' claims—i.e. the purported unsuitable investment recommendations and failure to disclose—arose, "at the latest" when the securities were purchased. Because the last sale occurred more than eight years before this lawsuit was filed, Plaintiffs' tort claims are barred.  *See* Ex. A.

## C.  Plaintiffs' State Law Claims Are Not Saved by Equitable Tolling

"The general rule is that [a court] will not extend the statute of limitations by even a single day."  *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010).  In limited, narrowly-defined circumstances, however, the doctrine of equitable tolling operates to pause a statute of limitations "when a litigant has

14

pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Stein*, 821 F.3d at 787 (quoting *CTS Corp v. Waldburger*, 134 S. Ct. at 2183). In Michigan, equitable tolling has two applications: the discovery rule and the doctrine of fraudulent concealment. Plaintiffs have not alleged, and cannot allege, facts meeting the exacting standards of either of those doctrines in order to extend the limitations period.

Under the discovery rule, "a claim does not accrue until a plaintiff knows, or objectively should know, that he has a cause of action and can allege it in a proper complaint." *Trentadue v. Buckler Lawn Sprinkler*, 738 N.W.2d 664, 670 (Mich. 2007). Fraudulent concealment—another tolling mechanism—is triggered "when a party conceals the fact that the plaintiff has a cause of action." *Sills v. Oakland Gen. Hospital*, 559 N.W.2d 348, 352 (Mich. Ct. App. 1996) ("[t]he plaintiff must prove that the defendant committed affirmative acts or misrepresentations that were designed to prevent subsequent discovery."); *see also* Mich. Comp. Laws § 600.5855.

### 1.   *The Discovery Rule Does Not Apply*

In Michigan, "courts may not employ an extrastatutory discovery rule to toll accrual[.]" *Frank v. Linkner*, 894 N.W.2d 574, 582 (Mich. 2017); *see also Trentadue,* 738 N.W.2d at 680 ("if courts are free to cast aside a plain statute in the name of equity, . . . then immeasurable damage will be caused to the separation of

powers mandated by our Constitution.")  In other words, because the "Michigan Supreme Court . . . has abolished all judicially created discovery rules . . . .", there must be a statutory basis to proceed under this theory.  *Barton v. NL Indus., Inc.*, No. 08-12558, 2010 WL 4038738, at *3 (E.D. Mich. Sept. 30, 2010).  For that reason, the discovery rule does not apply to "the accrual of actions for fraud."  *Boyle v. Gen. Motors Corp.*, 661 N.W.2d 557, 560 (Mich. 2003) ("[p]laintiffs' cause of action accrued when the wrong was done, and they had six years thereafter to file a complaint.  Because Plaintiffs failed to do so, their cause of action is barred."); *Good v. Howmedica Osteonics Corp.*, No. 15-CV-10133, 2015 WL 8175256, at *4 (E.D. Mich. Dec. 8, 2015) (under Michigan law, "fraud claims are [subject to] the six-year statute of limitations, to which the discovery rule also does not apply.")

Despite this clear guidance, Plaintiffs apparently attempt to invoke the discovery rule by asserting that they only "recently learned" about their claims when, "in February 2016, UDF III and its affiliate United Development Funding IV ("UDF IV") had their offices raided by the FBI following allegations that they [were] operating a Ponzi scheme."  FAC ¶¶ 53; 89, 114, 134, 154, 177.  This is a non-starter for at least two reasons.  First, the accrual language governing Plaintiffs' claims does not contain the magic words indicating that the legislature intended to provide a "discovery" period.  *See* Mich. Comp. Laws § 600.5813 (fraud actions "shall be commenced within the period of 6 years after the claims accrue."); Mich. Comp.

16

Laws § 600.5805(10) ("the period of limitations is 3 years . . . to recover damages for the death of a person, or for injury to a person or property.")  More than that, the factual premise offered in support of Plaintiffs' claims—unsuitability, conflict of interest, and the NASD bar—all sound in fraud.  Under section 600.5827 of the Michigan statute, "a claim accrues at the time when the wrong is done."  Mich. Comp. Laws § 600.5827.  Here, the "wrong" is tethered to Plaintiffs' purchase of "one or more of UMT, UDF II, and UDF III", which occurred no sooner than eight years ago. FAC ¶ 25.  Simply put, Plaintiffs are out of time and the discovery rule cannot save their claims.

> 2.    *Plaintiffs Fall Remarkably Short of Pleading Fraudulent Concealment*

Nor can Plaintiffs seek safe haven under the doctrine of fraudulent concealment.  Fraudulent concealment "is invoked in cases where the defendant takes *active steps* to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations."  *Bridgeport Music, Inc. v. Diamond Time, Ltd*., 371 F.3d 883, 891 (6th Cir. 2004) (emphasis added); *see also Lenawee Cty. Drain Comm'r v. Env't One Corp*., No. 07-CV-14290, 2008 WL 11356774, at *5 (E.D. Mich. Apr. 29, 2008) (Steeh, J.) ("[t]he Amended Complaint is devoid of any other facts giving rise to a reasonable inference of culpable knowledge, or facts demonstrating bad motive in intentional concealment of the improvements to the pipe. There is an absence in the complaint of basic allegations

setting forth the what, where, when, and why of the claimed fraud, as required by

Rule 9.")  "The Federal Rules of Civil Procedure, . . . require that the acts constituting

fraudulent concealment of a claim be pled in the complaint." *Evans v. Pearson*

*Enters., Inc*., 434 F.3d 839, 851 (6th Cir. 2006) (citing Fed.R.Civ.P. 9(b)).  To satisfy

this obligation, "Rule 9(b) [] requires that the complainant plead with particularity

the acts of concealment, which include the following: '(1) wrongful concealment of

their actions by the defendants; (2) failure of the plaintiff to discover the operative

facts that are the basis of his cause of action within the limitations period; and (3)

plaintiff's due diligence until discovery of the facts.'"  *Universal Bearing Co. v.*

*Baker Bearing Co.*, No. 10-11142, 2013 WL 1211463, at *2-3 (E.D. Mich. Mar. 25,

2013) (citing *Id*.)  Plaintiffs have failed at every turn.

a.    <u>Fraudulent Concealment Requires Affirmative Acts</u>

Even assuming Plaintiffs intend to rely on the doctrine of fraudulent

concealment—which is far from clear in the FAC—they have failed to plead the

most basic element; namely, that Mr. Kopacka "committed affirmative acts or

misrepresentations that *were designed* to prevent subsequent discovery" of their

*claims.  Id.* at *3 (emphasis added) (quoting *Sills*, 559 N.W.2d at 352).  As this Court

has aptly explained, the "claims/evidence" distinction is critical: "the essential

element in stating a cause for fraudulent concealment is concealment of the *existence*

*of the claim*, as contrasted with concealment of the *evidence* necessary to prove such

18

a claim." *Lenawee Cty.*, 2008 WL 11356774, at *6 (emphasis added) (quoting *Gomez v. Great Lakes Steel Div.*, 803 F.2d 250, 254 (6th Cir. 1986)). In *Lenawee County*, the Court had little trouble concluding that the plaintiff failed to appreciate this distinction, reasoning that: "the fact that defendant allegedly changed its piping specifications from those spelled out in the contract may constitute evidence to support a breach of contract claim, but is not proof that defendant fraudulently concealed plaintiff's cause of action." *Id.* at *7.

Similarly here, setting aside the fact that Plaintiffs have failed to plead the "what, where, when, and why of the claimed fraud", the closest they come to suggesting that Defendants intended to conceal anything is by asserting, without support, that they "had no idea what the value of their UMT investment was because they [] did not receive statements from UMT, . . . ." and that "in recent years . . . Kopacka [] avoided [plaintiffs'] calls . . . ." *See e.g.* FAC ¶¶ 82, 104, 111, 146, 153, 168 (emphasis added). But these so-called omissions are missing a critical ingredient: "they [do] not conceal from the plaintiff the means of discovering his cause of action." *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1127 (6th Cir. 1982). Indeed, as the Sixth Circuit has often repeated, "there must be some trick or contrivance intended to exclude suspicion and prevent inquiry." *Fillinger v. Lerner Sampson & Rothfuss,* 624 F. App'x 338, 341 (6th Cir. 2015). Plaintiffs are focused on representations pertaining to the purported concealment of evidence, not the

existence of a claim. *See Gomez*, 803 F.2d at 255 ("[p]erhaps a case for fraudulent concealment could have been made had Great Lakes actively misled Gomez by fabricating reasons for his lack of promotion, but such is not the case.") And this is dispositive.

But all of this misses a much more fundamental point: "in the post-*Igbal* [sic] and *Twombly* world of pleading standards, mere supposition about the inferences to be drawn from a complaint cannot carry the day." *Fed.-Mogul World Wide, Inc. v. Mahle GmbH*, No. 11-10675, 2011 WL 4485080, at *13 (E.D. Mich. Sept. 27, 2011) ("[u]nder the circumstances of this case, the Court believes that Federal–Mogul's claim for statutory tolling cannot withstand Rule 12(b)(6) standards. The complaint lacks sufficient allegations that Mahle made specific affirmative representations with the intent that Federal–Mogul would rely upon them to their detriment."). This is especially so in the context of fraudulent concealment, because it works to effectively neutralize a legislative pronouncement.  And, for that reason, the courts have long recognized that the "tolling concept is based on explicit conscious deception, concealment and bad faith on the part of a defendant."  *Platsis v. E.F. Hutton & Co. Inc*., 642 F. Supp. 1277, 1304 (W.D. Mich. 1986), *aff'd*, 829 F.2d 13 (6th Cir. 1987).   Simply put, Plaintiffs have not—and cannot—allege facts establishing that Mr. Kopacka "contrived to deceive" by actively concealing a cause of action.

b.   Plaintiffs Failed to Exercise Due Diligence

As the Sixth Circuit, Michigan Court of Appeals, and this Court have all made clear, "if the public record would have provided notice of the claim, reliance on [fraudulent concealment] to postpone the running of the limitations period is inappropriate." *Tinney v. Widdis, Inc.*, No. 328050, 2016 WL 6584571, at *6 (Mich. Ct. App. Nov. 3, 2016); *McLean v. Countrywide Home Loans, Inc.*, No. 09-CV-11239, 2009 WL 2777017, at *5 (E.D. Mich. Aug. 27, 2009) (Steeh, J.) ("[p]laintiffs' allegation that Countrywide provided 'false interest rate, fee and monthly payment disclosures' that were 'seriously misleading' fails to articulate why plaintiffs, . . . did not or could not discover by exercising due diligence that the disclosures were false. Plaintiffs have not alleged a plausible claim of fraudulent concealment.")

Even assuming Mr. Kopacka's representations amounted to active concealment—which they did not—there is no question that Plaintiffs "knew, or could have learned [of the purportedly improper conduct] through minimal investigation of public records." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 502 (6th Cir. 2003). As the Sixth Circuit has explained: "[w]hen individuals have 'the means of discovery in [their] power,' they generally are 'held to have known it.'" *Ruth*, 604 F.3d at 911 (citations omitted) (declining to apply the doctrine of fraudulent concealment because "[h]ad [Plaintiff]

21

put minimal effort into searching public sources during the limitations period, she would have discovered all she needed to know.")  Here, a simple Google search would have revealed the three purported misrepresentations and omissions propping up the FAC.  Indeed, the prospectuses for UMT and UDF III were posted on the Securities and Exchange website—providing information about the suitability of the investments—and Mr. Kopacka is clearly listed as a limited general partner, clarifying his interest in the funds. Ex. C[9].[10]  Furthermore, Mr. Kopacka's so-called "NASD bar" which, as discussed, is far more limited than Plaintiffs suggest, is available on FINRA's website (which is prominently featured as one of the first listed items in a Google search of Mr. Kopacka).  Ex. D.  In this way, the unsuitability, conflict of interest, and NASD bar are all based on information that has been at Plaintiffs' fingertips long before this case was filed.  *See Tinney*, 2016 WL 6584571, at *6 ("[p]laintiffs could have simply looked at the appropriate records and discovered that the room was built without proper permits, and under the

---

[9] United Development Funding III, LP, Prospectus (Form 424B3) (May 18, 2006), at 17, 45-46; United Mortgage Trust, Prospectus (Form 424B3) (June 6, 2001), at 10, 46-47.  Full web addresses for the filings are available in Defendants' Exhibit List.

[10]  *See Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001) (noting that a court may consider "the full text of the SEC filings, prospectus, analysts' reports and statements 'integral to the complaint,' even if not attached, without converting the motion into one for summary judgment").

objective 'should have discovered' standard, they are in fact charged with knowledge of the information contained in the public record.")

Nor can there be any doubt, based on Plaintiffs' own allegations, that they had reason to investigate. For example, according to the complaint, "[i]n the ensuing years after they invested with UMT, [Plaintiffs] had no idea what the value of their UMT investment was because they either *did not receive statements* from UMT, or because the statements they received contained unreliable, misleading valuation estimates . . . ." FAC ¶¶ 82, 104, 146, 168 (emphasis added). "Any fact that should excite [] suspicion is the same as actual knowledge of [the] entire claim, . . . ." *Hamilton Cty. Bd. of Comm'rs v. Nat'l Football League*, 491 F.3d 310, 318 (6th Cir. 2007) (quotation and citation omitted) ("[t]he County cannot satisfy this test because it knew the 'operative facts that are the basis of [its] cause of action within the limitations period.'"). Plaintiffs fail to specify the investigatory steps they took—if any—once they stopped receiving statements or suspected that they were unreliable. This is fatal. *See Campbell*, 676 F.2d at 1128 ("those plaintiffs who delay unreasonably in investigating circumstances that should put them on notice will be foreclosed from filing, once the statute has run.").

For all of these reasons, there is no equitable doctrine that can save Plaintiffs' untimely claims, and the Court should dismiss them with prejudice.

**D.    Plaintiffs Have Failed to Properly Plead Their Securities Fraud, Common Law Fraud, and Breach of Fiduciary Duty Claims**

23

Timing is hardly Plaintiffs' only problem.  Counts 1, 2, and 4—all of which sound in fraud—are subject to the heightened pleading burden imposed under Rule 9(b) of the Federal Rules of Civil Procedure.  The FAC falls remarkably short of this "boulder-esq" standard.

Under Rule 9(b), all averments of fraud must be stated with particularity.  This holds true for *all* allegations of fraud, regardless of the cause of action in which they appear.  *See e.g. Smith v. Bank of America Corp*., 485 F. App'x 749, 752 (6th Cir. 2012) (holding that Rule 9(b) applies equally to a claim of negligent misrepresentation where the claim is based on a "unified course of fraudulent conduct.").  At a minimum, courts in this Circuit have held that the Rule 9(b) standard is met when the complaint alleges "(1) the time, place, and content of the alleged misrepresentation on which [the plaintiff] relied; (2) the fraudulent scheme; (3) the fraudulent intent of the defendants; and (4) the injury resulting from the fraud." *U.S. ex rel. Marlar v. BWXT Y-12, L.L.C.*, 525 F.3d 439, 444 (6th Cir. 2008). In other words, when pleading claims predicated on fraud, the plaintiff must state "the who, what, when, where, and how."   *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 844 (7th Cir. 2007).  Because all of Plaintiffs' "fraud" claims are premised on the same common allegations—i.e. Mr. Kopacka (1) misrepresented the suitability of the investments, (2) never disclosed

his interest in the UMT/UDF Funds, and (3) failed to disclose his NASD bar—they all fail for essentially the same reasons.

### 1. Federal Securities Fraud

As the Court is well-aware, there are six elements to a securities fraud claim under § 10(b) of the 34 Act and SEC Rule 10b–5: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano,* 563 U.S. 27, 37-38 (2011).

Beyond the particularity requirement of Rule 9(b), the PSLRA imposes additional pleading requirements on securities fraud plaintiffs. That Act provides that plaintiffs must "specify *each statement* alleged to have been misleading, the *reason or reasons why* the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1)(B) (emphasis added); *see also In re Omnicare, Inc. Secs. Litig.*, 769 F.3d 455, 461 (6th Cir. 2014) (describing heightened pleading requirements and dismissing complaint for failure to meet them). On scienter, the PSLRA further provides that "the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with particularity facts giving rise to a strong inference*

that the defendant acted with the required state of mind." *Id.* § 78u–4(b)(2)(A) (emphasis added).  If either requirement is not met, "the court *shall*, on the motion of any defendant, *dismiss* the complaint."  *Id.* § 78u 4(b)(3)(A) (emphasis added). These pleading requirements "are purposefully demanding and have been described as exacting and as an elephant-sized boulder blocking [a plaintiff's securities] suit." *Lubbers v. Flagstar Bancorp. Inc.*, 162 F. Supp. 3d 571, 576 (E.D. Mich. 2016).

Another principle bears on the sufficiency of Plaintiffs' claims.  Courts have consistently rejected securities claims based on "fraud-by-hindsight."   Thus, a plaintiff cannot state a claim for securities fraud by alleging "that the fact that something turned out badly must mean defendant knew earlier it would turn out badly." *Louisiana School Emps. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 484 (6th Cir. 2010); *see also Dailey v. Medlock*, 551 Fed. App'x. 841, 847 (6th Cir. 2014) (fact that company took valuation allowance in later period did not support claim that defendant knew in earlier period it was required); *City of Livonia Emps. Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 758 (7th Cir. 2013) (there is no "fraud by hindsight").

There can be no question that the FAC falls short.  Rather than specifying "each statement alleged to have been misleading, and the reasons why the statement is misleading," Plaintiffs rely on vague, sweeping assertions.  For example, the so-called "fraudulent scheme"—which occupies a mere three paragraphs in the 232

paragraph complaint—suggests that "Ms. Kopacka helped Kopacka launder the transactions . . . . under the pretense that Plaintiffs were clients of Ms. Kopacka . . . ." FAC ¶¶ 39-40.  But this leaves Defendants, and the Court, to guess the "what, when, and how" of the fraud: a fatal omission.

Moreover, even laying what appears to be the general theory of Plaintiffs' complaint over these allegations, the pleading boulder still remains.  Beginning with the unsuitability claim, Plaintiffs assert that Mr. Kopacka "misrepresented the risk, liquidity, and other features of the investments . . . ." FAC ¶ 32. Yet, the FAC says nothing about what those misrepresentations were, and, more importantly, why Plaintiffs waited over eight years (on the low end) to raise a suitability objection. Reading further, it becomes clear that the true impetus for Plaintiffs' claims has nothing to do with what was or was not said at the time of investment—which remains a mystery—but rather the FBI's actions and the SEC's issuance of "Wells notices to UDF III and UDF IV . . . ." *Id.* at ¶ 54.  But this is classic "fraud by hindsight", and the courts have consistently rejected efforts to use later-acquired information to prop-up claims of scienter under Section 10(b).  *See Denny v. Barber,* 576 F.2d 465, 470 (2d Cir. 1978) (affirming district court's dismissal of an amended complaint based on failure to plead fraud with particularity and noting, "[i]n sum, the complaint is an example of alleging fraud by hindsight. For the most part,

27

plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones.").

In other words, "[w]hat is lacking from all of [plaintiffs'] allegations are particularized facts to support the inference that the defendants acted recklessly or with fraudulent intent." *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1129 (2d Cir. 1994). And without specific facts, the Court is unable to evaluate the plausibility of "opposing inferences"; namely, that the true source of Plaintiffs' ire is not Mr. Kopacka's purported statements or omissions, but rather their disappointment in the performance of UMT and the UDF Funds after years of positive growth. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324 (2011) (a complaint adequately pleads scienter under the PSLRA "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."). Inescapably, "Plaintiffs have failed to plead fraud and Defendants' *scienter* with the particularity required by Rule 9(b), the PSLRA, and the consonant jurisprudence that has considered this issue." *Albert Fadem Tr. v. Am. Elec. Power Co.,* 334 F. Supp. 2d 985, 1018 (S.D. Ohio 2004).

Simply put, there are two very clear roadblocks to Plaintiffs' securities fraud claims (i.e. timeliness and pleading standards), neither of which can be shored-up

with an amendment to the complaint.  For those reasons, the Court should dismiss
Count 4 with prejudice.

2.    *State Law Claims*

Plaintiffs' state law claims are based on—and plagued by—the same deficient
allegations.   And, because these claims—fraud, breach of fiduciary duty, and
negligent misrepresentation—"sound in fraud", Plaintiffs must "allege facts in
keeping with the particularity requirement of Rule 9(b), . . . ."   *Yermian v.
Countrywide Home Loans, Inc*., No. 09-CV-12665, 2009 WL 5150882, at *4 (E.D.
Mich. Dec. 17, 2009) (Steeh, J.) ("conclusionary recitations of the elements of . . .
negligent misrepresentation do not meet the particularity requirements of Rule
9(b).")   However, as Defendants have already discussed, the primary fraud
allegations making up the FAC—and referred to under each of the substantive
counts—fail to describe the "who, what, when, where, and how" of the purported
scheme, let alone the "fraudulent intent" of those involved.  *See Miller v. Laidlaw &
Co. (UK)*, No. 11-12086, 2013 WL 1278484, at *2 (E.D. Mich. Mar. 27, 2013)
(under Rule 9(b), "Plaintiffs' negligent misrepresentation claims are dismissed to
the same extent that the fraud claims were dismissed.").  Indeed, each of Plaintiffs'
state law claims relies on the same generic premise: "[t]hrough a series of intentional
and material misrepresentations and omissions, including each of his representations
and omissions described *supra*, . . . ."  Kopacka breached his fiduciary

29

duties/defrauded Plaintiffs.  *See* FAC ¶¶ 179, 189, 195.  But that is plainly not enough to "provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud."  *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999).  For that reason, and those discussed more specifically under Section III.D.1, *supra*, the state law claims fail to breach the Rule 9(b) pleading threshold.

Moreover, "[a]s with fraud, negligent misrepresentation requires proof that the defendant misrepresented a past or existing *fact*."  *Miller,* 2013 WL 1278484, at *2 (emphasis added).  In other words, "statements qualifying an investment, such as 'great investment' and 'huge investment and business opportunity,' and statements regarding the growth of return of an investment or when the investment would be repaid are nothing more than opinions about future promises."  *Id.*  And this is precisely what Plaintiffs have alleged here.  The closest the FAC comes to suggesting that Mr. Kopacka misrepresented a "fact", is by asserting that he recommended the UDF Funds as "suitable investments . . . in light of [Plaintiffs'] conservative goals and low risk tolerance."  *See e.g.* FAC ¶¶ 78-79.  Simply put, these statements are not actionable.  *See Hanover Exch. v. Metro Equity Grp. LLC*, No. 2:08-CV-14897, 2009 WL 2143866, at *9 (E.D. Mich. July 14, 2009) (the "misrepresentation must have been 'of facts that can be independently verified.'  As a result, statements of opinion cannot give rise to liability for negligent

misrepresentation, even if the opinion ultimately turns out to be incorrect.")
(citations to Michigan authority omitted)).  And the reason this is the best Plaintiffs
can come up with is simple: up until being targeted by a notorious short-seller, the
UDF Funds were performing well.  Ex. B.[11]

   3.   *Plaintiffs' Breach of Fiduciary Duty Claim is Not Cognizable for*
        *at Least Two Other Reasons*

Beyond the failure to meet the Rule 9(b) pleading standard, Plaintiffs' breach
of fiduciary duty claim suffers from another fundamental flaw: Michigan law has
long-recognized that "[n]o fiduciary relationship arises on the basis of duties owed
to non-discretionary account customers."  *Davis v. Keyes*, 859 F. Supp. 290, 294
(E.D. Mich. 1994).  Indeed, "it is uncontested that a broker ordinarily has no duty to
monitor a nondiscretionary account, or to give advice to such a customer on an
ongoing basis."  *Kwiatkowski v. Bear Stearns & Co., Inc.*, 306 F.3d 1293, 1302 (2d
Cir. 2002).  In other words, to proceed with this claim, Plaintiffs must, at a minimum,
"allege that the accounts were discretionary."  *Miller*, 2013 WL 1278484, at *2.  "As
is evident from a reading of the pleadings, the Plaintiffs have not pled that any
accounts allegedly held by [] were discretionary."  *Hasse v. GunnAllen Fin., Inc.*,
No. 08–10927, 2011 WL 768045, at *9 (E.D. Mich. Feb. 28, 2011).  For that reason
alone, the Court should dismiss Plaintiffs' breach of fiduciary duty claims.

-------

[11] Exhibit B contains various publically available articles discussing infamous
short-seller Kyle Bass.  Full web addresses are available in Defendants' Exhibit List.

31

Finally, as discussed, Plaintiffs assert that even though Mr. Kopacka was "not registered to provide investment advice", and had no authority to "consummate the transactions" at issue, FAC ¶¶ 38-39, he nevertheless owed them fiduciary duties based on their "inexperience" and "trust" in his "expert[ise] in investing." *See e.g.* FAC ¶¶ 74, 80. This is incorrect. On the contrary, the courts have been clear that "allegations of inexperience and reliance . . . are insufficient to claim a fiduciary relationship." *Jarbo*, 2010 WL 5173825, at *15 (citation and quotations omitted) Once again, Plaintiffs are missing a legal and factual hook to support their claim, an oft-repeated theme throughout the FAC.

## IV.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' First Amended Complaint in its entirety, with prejudice.

> HONIGMAN MILLER SCHWARTZ AND COHN LLP
>
> /s/  Raymond W. Henney
> Raymond W. Henney (P35860)
> Adam M. Wenner (P75309)
> Honigman Miller Schwartz and Cohn LLP
> Attorneys for Defendants
> 2290 First National Building
> 660 Woodward Avenue
> Detroit, Michigan 48226
> (313) 465-7410
> rhenney@honigman.com
> awenner@honigman.com

## **CERTIFICATE OF SERVICE**

The undersigned certifies that this document was filed through the ECF system on September 18, 2017, and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Raymond W. Henney
Raymond W. Henney (P35860)
Adam M. Wenner (P75309)
Honigman Miller Schwartz and Cohn LLP
Attorneys for Defendants
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
(313) 465-7410
rhenney@honigman.com
awenner@honigman.com

25493747.11