UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EQUITY TRUST COMPANY, et al.,

        Plaintiff,

                                      Case No.  17-12275
vs.                               HON.  GEORGE CARAM STEEH

TIMOTHY JAMES KOPACKA, et al.,

        Defendant.

_____/

## OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS (DOC. 13), GRANTING PLAINTIFFS LEAVE TO AMEND THE COMPLAINT, AND GIVING NOTICE THAT THE COURT WILL REMAND THE REMAINING STATE LAW CLAIMS IF PLAINTIFFS FAIL TO AMEND THE COMPLAINT TO STATE A FEDERAL CLAIM

Plaintiffs Danny Wrubel; Teresa Wrubel; the Marion Family Living
Trust, by its Trustee, Josephine A. Marion; the Marion Irrevocable Trust, by
its Trustee, Teresa Wrubel; Josephine A. Marion, by her Next Friend,
Teresa Wrubel; Equity Trust Company, Custodian FBO Marilynn Peterson
IRA; Marilynn Peterson; Travis Peterson; the Ferrario Family Revocable
Trust, by its Trustee, Julie Ferrario; Julie Ferrario; Julie Vipond; Karen Fell;
the Marilynn L. Peterson Revocable Trust, by its Trustee, Marilynn L.
Peterson; and Equity Trust Company, Custodian FBO Danny J. Wrubel IRA
bring this securities fraud action against defendants Timothy James

Kopacka, United Mortgage Trust (UMT), United Development Funding II, LP (UDF II), and United Development Funding III, LP (UDF III).

Plaintiffs filed suit in Macomb County Circuit Court on June 28, 2017. On July 12, 2017, defendants removed the case to federal court on the basis of jurisdiction under 28 U.S.C. § 1331. Plaintiffs filed their First Amended Complaint (FAC) on August 2, 2017. (Doc. 9). Plaintiffs bring six claims; fraud (Count I), breach of fiduciary duties, (Count II), negligent misrepresentation/omission, (Count III), securities fraud under section 10(b) of the Securities and Exchange Act and SEC Rule 10b-5, (Count IV), civil RICO, (Count VI), and civil RICO conspiracy, (Count VII). Plaintiffs pleaded additional theories of liability including aiding and abetting fraud and breach of fiduciary duty, (Count V), and agency, (Count VIII).

Defendants filed the instant motion to dismiss on September 18, 2017. (Doc. 13). Plaintiffs filed a response on October 30, 2017. (Doc. 16). Defendants filed a reply on November 30, 2017. (Doc. 19). The Court held oral argument on July 16, 2018. For the reasons stated below, defendants' motion to dismiss is GRANTED IN PART. Counts VI and VII are dismissed with prejudice. Count IV is dismissed without prejudice. The Court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims. The Court will allow plaintiffs an opportunity to amend their

complaint regarding Count IV. Plaintiffs' failure to amend by the deadline will result in remand of the remaining state law claims.

## I. Background

Plaintiffs worked with Kopacka to purchase interests in UMT, UDF II, and UDF III between 2000 and 2009. (Doc. 9 at PageID 65). In 2016, the FBI investigated UDF II and UDF III following allegations that they were operating a Ponzi scheme. (Doc. 9 at PageID 68). This investigation appears to have prompted plaintiffs' complaint. The FAC generally alleges that Kopacka made three types of misrepresentations; (1) misrepresenting the risk, liquidity, and other features of the investments; (2) concealing Kopacka's status as a direct or indirect owner, manager, and/or advisor of UMT, UDF II, or UDF III; and (3) failing to disclose that Kopacka was barred from the stock brokerage industry. (Doc. 9 at PageID 65-66).

## II. Legal Standard

A court confronted with a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether the plaintiff's factual allegations present plausible claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). "[N]aked assertions devoid of further factual enhancement" and "unadorned, the-

defendant-unlawfully-harmed-me accusation[s]" are insufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain "detailed" factual allegations, but its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

## III. Analysis

### A. Counts VI and VII

Count VI alleges a civil RICO claim pursuant to 18 U.S.C. § 1962(c), which prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Plaintiffs allege that defendants "worked together to fraudulently cause Plaintiffs and other investors to purchase securities issued by companies" with which Kopacka was associated and held pecuniary interests. (Doc. 9 at PageID 89). Plaintiffs allege that Kopacka "operated an unregistered investment advisor firm, was legally prohibited from providing investment advice, was barred by the NASD, and used his

wife, Ms. Kopacka, and other registered representatives of D.H. Hill

Securities and IMS Securities as conduits through which to unlawfully sell

shares of UMT and partnership interests in UDF II and UDF III to his

clients." (Doc. 9 at PageID 88). Plaintiffs frame these allegations as

predicate acts of mail fraud and wire fraud. (Doc. 9 at PageID 89).

Section 107 of the Private Securities Litigation Reform Act (PSLRA)

amended 18 U.S.C. § 1964(c) to prohibit plaintiffs from relying "upon any

conduct that would have been actionable as fraud in the purchase or sale

of securities to establish a violation of [18 U.S.C.] section 1962." As such,

"[a]ny fraudulent conduct actionable under the securities laws is no longer

actionable under RICO." *Aries Aluminum Corp. v. King*, 194 F.3d 1311, at

*2 (6th Cir. 1999) (table) (citing *Bald Eagle Area School District v. Keystone

Financial, Inc.,* 189 F.3d 321, 329-30 (3rd Cir.1999)). Moreover, "a plaintiff

cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud

and bank fraud as predicate offenses in a civil RICO action if the conduct

giving rise to those predicate offenses amounts to securities fraud. Allowing

such surgical presentation of the cause of action here would undermine the

congressional intent behind the RICO Amendment." *Javitch v. First

Montauk Fin. Corp.*, 279 F. Supp. 2d 931, 943–44 (N.D. Ohio 2003) (citing

*Bald Eagle Area School Dist.,* 189 F.3d at 330).

Count VI implicates "conduct that would have been actionable as [securities] fraud." 18 U.S.C. 1964(c). In fact, plaintiffs' securities fraud claim is based on the same conduct. As such, 18 U.S.C. § 1964(c) bars the use of this alleged conduct as predicate offenses. Plaintiffs do not plead any other predicate offenses. The FAC therefore fails to state a civil RICO claim. Count VI is dismissed.

Count VII alleges that all defendants participated in a civil RICO conspiracy. "To establish a violation of 18 U.S.C. § 1962(d), Plaintiffs must successfully allege all elements of a RICO violation, in addition to alleging 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Taborac v. NiSource, Inc.*, No. 2:11-CV-498, 2011 WL 5025214, at *9 (S.D. Ohio Oct. 21, 2011) (quoting *United States v. Sinito,* 723 F.2d 1250, 1260 (6th Cir.1983)). "Where, as here, the substantive RICO count fails to state a claim, the conspiracy claim fails, too, as to all Defendants." *Id.* (citing *Craighead v. E.F. Hutton & Co., Inc.,* 899 F.2d 485, 495 (6th Cir.1990)). As such, the Court shall dismiss Count VII.

## B. Count IV

Count IV alleges that Kopacka committed securities fraud in violation of Section 10(b) of the Securities and Exchange Act of 1934 and SEC Rule 10b-5, which "prohibit fraudulent, material misstatements or omissions in

connection with the sale or purchase of a security." *Zaluski v. United Am.*

*Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008) (internal citations and

quotations omitted). Pursuant to 28 U.S.C. § 1658(b),

> a private right of action that involves a claim of
> fraud, deceit, manipulation, or contrivance in
> contravention of a regulatory requirement
> concerning the securities laws, as defined in section
> 3(a)(47) of the Securities Exchange Act of 1934 (15
> U.S.C. 78c(a)(47)), may be brought not later than
> the earlier of – (1) 2 years after the discovery of the
> facts constituting the violation; or (2) 5 years after
> such violation.

"The Supreme Court has held the two-year period to be a statute of

limitations, and described the five-year period as an 'unqualified bar on

actions instituted "5 years after such violation," [28 U.S.C.] § 1658(b)(2),

giving defendants total repose after five years.'" *Stein v. Regions Morgan*

*Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 787 (6th Cir. 2016)

(quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 650 (2010)). The Sixth

Circuit "read[s] this language as interpreting § 1658(b)(2) as a statute of

repose." *Stein*, 821 F.3d at 787.[1]

---

[1] "[A] statute of limitations creates a time limit for suing in a civil case, based on the date when the claim accrued." *Stein*, 821 F.3d at 786 (quoting *CTS Corp v. Waldburger*, 134 S. Ct. 2175, 2182 (2014) (internal quotation and citation omitted). "[A] statute of repose 'puts an outer limit on the right to bring a civil action,' which is 'measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant.'" *Id.* (quoting *CTS Corp*, 134 S. Ct. at 2182). "Statutes of limitations, but not statutes of repose, are subject to equitable tolling, a doctrine that pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Id.* at 787 (quoting *CTS Corp*, 134 S. Ct. at 2183). "Statutes

Defendant Kopacka argues that Count IV is precluded by 28 U.S.C. § 1658(b). Kopacka asserts that the "violation" referenced in the statute is limited to misrepresentations preceding a purchase or sale of securities. As such, Kopacka reasons that the outer limit to file a federal securities claim is five years from the final sale date. Kopacka relies on *Stein* and *In re Rospatch Sec. Litig.*, No. 1:90-CV-805, 1991 WL 335253 (W.D. Mich. Oct. 11, 1991).

In *Stein*, investors brought a federal securities case alleging misrepresentations regarding risk, liquidity, and diversification of funds in which they had invested. 821 F.2d at 780. In 2007 and 2008, following the plaintiffs' investment, the funds lost nearly 90% of their value. *Id.* at 783. As a result, management of the funds was turned over to a different investment advisor in July 2008. *Id.* The plaintiffs filed suit on October 25, 2013. *Id.* at 785. The complaint did not allege any misconduct by any defendant following the 2008 management transfer. *See id.* at 792. While the court ultimately ruled that the plaintiffs' federal securities claims were barred by the statute of repose, it did not hold that the Section 10(b) repose

---

of repose, on the other hand, generally may not be tolled, even in cases of extraordinary circumstances beyond a plaintiff's control.... [A] statute of repose is a judgment that defendants should be free from liability after the legislatively determined period of time, beyond which the liability will no longer exist and will not be tolled for any reason." *Id.* at 787 (quoting *CTS Corp*, 134 S. Ct. at 2183).

period is triggered by the purchase or sale of a security. *Id.* at 792-94. To

the contrary, the court stated that "Plaintiffs also do not make clear when

the violations of Section 10(b) and 20(a) of Securities Exchange Act, 15

U.S.C. §§ 78j(b) and 78t(a), occurred, or when they believe the five-year

repose period to have started running. *See* 28 U.S.C. § 1658(b)(2)." *Id.* at

792.  Rather than adding five years to the date of the last purchase or sale,

the court appears to have counted back five years from the complaint to

consider whether the defendants committed any violations between

October 25, 2013 and October 25, 2008. *See id.*

> In any event, Defendants cannot have offered securities to the public, sold them, or engaged in any of the other misconduct alleged in the complaints after July 2008, when management of the four closed-end funds was turned over to a different investment advisor, and after which the allegations of misconduct by Defendants cease. Because Plaintiffs filed their respective complaints on October 25, 2013—more than five years later— all of their claims are barred by the relevant three- or five-year statutes of repose . . .

*Id.*

In *Rospatch*, the defendant argued that the plaintiff's federal

securities claims should be dismissed as time-barred under the "one-

year/three-year statute of limitations announced in *Lampf, Pleva, Lipkind,*

*Prupis and Petigrow v. Gilbertson*, 501 U.S. 350 (1991)." 1991 WL 335253,

at *1. *Lampf* held that "all section 10(b) and Rule 10b-5 securities fraud

claims . . . 'must be commenced within one year after discovery of the facts

constituting the violation and within three years after such violation.'" *Id.* at

*3 (citing *Lampf*, 501 U.S. at 350).[2] The defendant asserted that the

plaintiff's claims were time barred under the three-year prong of *Lampf*

because the plaintiff purchased its stock more than three years before the

defendant was added to the class complaint. *Id.* at *4. The Court ruled for

the defendant, stating that the plaintiff's federal securities claims "cannot be

preserved by arguing that the limitations period should begin later because

of the doctrine of continuing wrong or fraudulent concealment." *Id.* The

Court ruled that "[a] later start to the three-year statute period is expressly

prohibited by *Lampf*," which "overruled any equitable tolling in prior law and

stated an absolute three-year period of repose." *Id.* Moreover, the court

stated that:

> The doctrine of continuing wrong cannot extend the
> start of the limitations period any later than the date
> the stock was purchased because a section 10(b)
> action is triggered by the purchase of stock. Both
> section 10(b) of the Securities Exchange Act of
> 1934 and SEC Rule 10b–5 require that any violation
> occur in connection with the purchase or sale of a
> security. 15 U.S.C. § 78j(b). For statute of
> limitations purposes, "[a] 10b–5 cause of action
> accrues on the date that the purchase or sale of
> securities occurred." *Helman v. Murry's Steaks, Inc.,*

---

[2] *Lampf* was superseded by the enactment of 28 U.S.C. § 1658(b). While the one-year/three-year limitations period has been extended. *Rospatch* may still offer value on which events trigger the start of the two-year/five-year limitations periods in section 1658(b).

> 742 F.Supp. 860, 869 (D.Del.1990). In [the plaintiff's] case, this means that its cause of action accrued as of the March 26—April 30, 1987 period when it last purchased stock in Rospatch.

*Id.*

The FAC suggests that plaintiffs discovered the alleged securities fraud in 2016 following the FBI investigation. Adding two years to this date, the year contemplated under 28 U.S.C. § 1658(b)(1) is 2018. The FAC alleges that plaintiffs purchased securities between 2000 and 2009. Adding five years to the last purchase, Kopacka reasons that the deadline imposed under 28 U.S.C. § 1658(b)(2) amounts to a date in 2014. The statute specifies that private rights of action must be brought not later than the earlier of these two dates. As such, Kopacka concludes that plaintiffs were required to bring their securities fraud claims by 2014. Plaintiffs' complaint was filed three years later in 2017. This deadline is imposed by a statute of repose, 28 U.S.C. § 1658(b)(2), and therefore, cannot be tolled. As such, Kopacka asserts that Count IV is barred.

Plaintiffs respond that the "violation" articulated in 28 U.S.C. § 1658(b) is not only comprised of misrepresentations preceding the purchase or sale of securities, but also any subsequent fraudulent misrepresentations. Plaintiffs conclude that the five-year repose period runs from the last fraudulent misrepresentation. Plaintiffs rely on three non-

binding district court opinions. *In re Beacon Assocs. Litig.*, 282 F.R.D. 315

(S.D.N.Y. 2012) states that, as "adopted by the majority of courts in [the

Second] Circuit," the statute of repose in section 1658(b)(2) "first runs from

the date of the last alleged misrepresentation regarding related subjecting

matter." *Id.* at 324-25 (collecting cases). Likewise, *Goldenson v. Steffens*,

802 F. Supp. 2d 240 (D. Me. 2011), states that "[c]ourts are generally in

agreement that the repose period runs from the date of the alleged

fraudulent statements." *Id.* at 258 (citing *In re Exxon Mobil Corp. Securities*

*Litig.*, 500 F.3d 189, 200-01 (3d Cir. 2007)). An additional case from a

district court in the First Circuit, *Quaak v. Dexia S.A.*, 357 F. Supp. 2d 330

(D. Mass. 2005), states that "[u]nder Section 10(b), the statute of repose

runs from the date of the last fraudulent misrepresentation." *Id.* at 338.

     The Sixth Circuit has not ruled on when the repose period under

section 1658(b)(2) begins to run. This Court therefore compares defendant

Kopacka's argument; directly supported[3] by only an unpublished 1991

opinion from the Western District of Michigan, with plaintiffs' argument;

generally supported throughout the First, Second, and Third Circuits. The

latter is more persuasive, particularly when supplemented by *In re Exxon*

*Mobil Corp. Securities Litig.*, 500 F.3d 189 (3d Cir. 2007). In *Exxon*, the

---

[3] As stated above, the Court finds that *Stein* does not directly support defendant Kopacka's argument.

Third Circuit addressed the following question; "when did § 9(e)'s and §

1658(b)(2)'s statutes of repose begin to run—at the time of Exxon's alleged

misrepresentation (the March 1999 proxy statement) or at the time its

merger with Mobil was consummated (late November 1999)." *Id.* at 199.

The Court concluded that:

> while it is true that for a § 10(b) claim to 'accrue'
> there must be an exchange of securities . . . and
> only then do plaintiffs suffer any actual injury,
> nevertheless the specific acts targeted by a § 10(b)
> cause of action are fraudulent statements
> themselves. It therefore is more consonant with the
> traditional understanding of how a statute of repose
> functions for the repose periods of § 9(e) and §
> 1658(b)(2) to begin from the date of Exxon's alleged
> misrepresentation: the March 26, 1999, proxy
> statement.

*Id.* at 200. This Court shall therefore consider the statute of repose to run

from the date of Kopacka's last fraudulent misrepresentation.

At issue, however, is when Kopacka's last fraudulent

misrepresentation was made. In their response to the motion to dismiss,

plaintiffs assert that they "have alleged that until very recently, Defendant

Kopacka continuously misrepresented to them that their investments were

performing well and that they were 'making money,' when in fact, the

issuers of the investments were operating a massive Ponzi scheme." (Doc.

16 at PageID 586). Plaintiffs further assert that "the most recent

misrepresentations occurred within a year of the FAC being filed," and as such, their "claims do not fall outside of the repose period. . . ." (Doc. 16 at PageID 587). Neither of these statements cite any specific allegation in the FAC. As such, the Court is unable to determine when the 5-year period began to run.

As in *Stein*, where the plaintiffs did "not make clear . . . when they believe the five-year repose period to have started running," this Court shall determine the five-year period by subtracting five years from the date that plaintiffs filed their complaint. The plaintiffs' original complaint was filed on June 18, 2017. (Doc. 1-2 at PageID 22). The Court therefore considers whether the FAC alleges that Kopacka made a misrepresentation between June 18, 2012 and June 18, 2017. The FAC makes no such allegation. At oral argument, plaintiffs' counsel conceded that the FAC does not state specific dates for many representations and would require amendment to maintain a federal claim. The Court agrees.

The Court shall therefore dismiss Count IV because, due to plaintiffs' undated allegations, it is barred by the statute of repose. Count IV, however, shall be dismissed without prejudice. Pursuant to Federal Rule of Civil Procedure 15(a)(2), the Court will allow plaintiffs to amend their complaint regarding Count IV. If plaintiffs wish to amend their complaint,

they SHALL FILE an amended complaint within TWENTY ONE DAYS of the entry of this opinion and order.

## C. State Law Claims

A district court "may decline to exercise supplemental jurisdiction over a claim" if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). As stated above, the Court shall dismiss Counts IV, VI, and VII; the three federal claims over which it has original jurisdiction. The remaining claims arise under Michigan law and address predominately state interests. The Court shall therefore decline to exercise supplemental jurisdiction over Counts I-III, V, and VIII at this time. If plaintiffs fail to file an amended complaint that successfully states at least one viable federal claim, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over plaintiffs' state law claims and will remand those claims to Macomb County Circuit Court pursuant to 28 U.S.C. § 1447(c).

## IV. Conclusion

For the reasons stated above defendants' motion is GRANTED IN PART.

Counts VI and VII are dismissed with prejudice.

Count IV is dismissed without prejudice. Pursuant to Rule 15(a)(2), the Court will allow plaintiffs to amend their complaint. If plaintiffs wish to amend their complaint, they SHALL FILE an amended complaint within TWENTY ONE DAYS of the entry of this opinion and order.

Further, the Court notes that it has dismissed all of plaintiffs' federal claims and that the parties are not diverse. If plaintiffs fail to file an amended complaint that successfully states a federal claim, the Court will exercise its discretion to decline to exercise supplemental jurisdiction over plaintiffs' remaining state law claims and remand those claims to Macomb County Circuit Court. *See* 28 U.S.C. §§ 1367(c)(3) and 1447(c).

IT IS SO ORDERED.

Dated:  August 3, 2018

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

*CERTIFICATE OF SERVICE*

*Copies of this Order were served upon attorneys of record on August 3, 2018, by electronic and/or ordinary mail.*

*s/Marcia Beauchemin*
*Deputy Clerk*